**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PB LIFE AND ANNUITY CO., LTD., *et al.*, | Case No. 20-12791 (LGB) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |
| JOHN JOHNSTON, as Joint Provisional Liquidator on behalf of PB LIFE AND ANNUITY CO., LTD., NORTHSTAR FINANCIAL SERVICES (BERMUDA) LTD., OMNIA LTD., and PB INVESTMENT HOLDINGS LTD. and PB LIFE AND ANNUITY CO., LTD., NORTHSTAR FINANCIAL SERVICES (BERMUDA) LTD., OMNIA LTD., and PB INVESTMENT HOLDINGS LTD., | Adv. Proc. No. 23-01000 (LGB) |
| Plaintiffs, | |
| v. | |
| GREGREY EVAN LINDBERG A/K/A GREG EVAN LINDBERG, *et al.*, | |
| Defendants. | |

## 763 DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND ALTERNATIVE MOTION TO STAY

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

   (a)   All Counts against 646 of the 763 Moving Defendants should be dismissed because there are no  allegations against them................................................. 3

   (b)   The entire amended complaint should be dismissed under Rule 12(b)(7), or alternatively, stayed until the NC Insurance Companies are joined .......................... 6

   (c)   Counts XII, XV, XVI, XVII, XXXIII, XXXIV, XXXV, XXXVII, XXXIX, XL,  XLI, and XLII should be dismissed under Rule 44.1 for failing to identify  foreign law ................................................................................................................. 8

   (d)   Counts I-VI, X-XI, XVI-XIX, and XLIV-XLVIII should be dismissed under Rule 9(b) for the JPLs' failure to plead those Counts with particularity. ...................... 9

   (e)   The JPLs' RICO claims – Counts XLIV-XLVIII – fail for their own unique reasons................................................................................................................... 12

CONCLUSION................................................................................................................... 15

28169845v2 92132.127.09

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adolphe v. Option One Mortg. Corp.*,
  No. 3:11-cv-418-RJC, 2012 WL 5873308 (W.D.N.C. Nov. 20, 2012)...................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................3

*Atuahene v. City of Hartford*,
  10 Fed. App'x. 33 (2d Cir. 2001)...............................................................................................3

*Barmapov v. Amuial*,
  No. 9:18-CV-80390, 2018 WL 11267365  (S.D. Fla. Dec. 12, 2018)........................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................3

*Coastal Modular Corp. v. Laminators, Inc.*,
  635 F.2d 1102 (4th Cir. 1980) ....................................................................................................8

*Crest Const. II, Inc. v. Doe*,
  660 F.3d 346 (8th Cir. 2011) ...................................................................................................14

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F. Supp. 2d 225 (E.D.N.Y. 2010) .....................................................................................13

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) ................................................................................................9

*G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*,
  No. 03 Civ. 10027, 2004 WL 1110423 (S.D.N.Y. May 19, 2004)....................................13, 14

*Gold v. Morrison-Knudsen Co.*,
  68 F.3d 1475 (2d Cir. 1995)........................................................................................................9

*Greater Chautauqua Fed. Credit Union v. Marks*,
  600 F. Supp. 3d 405 (S.D.N.Y. 2022)........................................................................................6

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
  No. 1:22-CV-2753 (MKV), 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023) .............................6

*Gutterman v. Herzog*,
  No. 20-CV-1081, 2020 WL 6728787 (E.D.N.Y. Nov. 16, 2020)......................................12, 15

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011)........................................................................................9

*In re Fairfield Sentry Ltd.*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021)........................................................................................8

*In Re Ford Fusion and C-Max Fuel Economy Litigation*,
  No. 13-MD-2450 (KMK), 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)...............................10

28169845v2 92132.127.09

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014)..................................................................................... 3

*Landress v. Tier One Solar, LLC*,
   243 F.Supp. 3d 633 (M.D.N.C. 2017) ...................................................................... 7

*Lesavoy v. Gattullo-Wilson*,
   170 Fed. Appx. 721 (2d Cir. 2006)........................................................................ 12

*Marketxt Holdings Corp. v. Engel & Reiman*, P.C.,
   693 F. Supp. 2d 387 (S.D.N.Y. 2010)...................................................................... 9

*Matsumura v. Benihana Nat. Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008)...................................................................... 9

*Medina v. Bauer*,
   No. 02 CIV. 8837(DC), 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ...................... 4

*Nicks v. Nicks*,
   241 N.C. App. 487 (2015) ........................................................................................ 4

*Prol v. Holland-Am. Line*,
   234 F. Supp. 530 (S.D.N.Y. 1964)........................................................................... 8

*Rahl v. Bande*,
   328 B.R. 387 (S.D.N.Y. 2005).................................................................................. 9

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...................................................................................... 9

*SCE Group, Inc. v. City of N.Y.*,
   No. 18 Civ. 8909, 2020 WL 1033592 (S.D.N.Y. March 3, 2020)......................... 3, 4

*TM, LLC v. Anderson*,
   No. 2:11-CV-00071, 2012 WL 4483180 (E.D.N.C. Sept. 27, 2012) ..................... 14

*U.S. v. Int'l Longshoremen's Assoc.*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) .................................................................... 13

**Statutes**

18 U.S.C. § 1962........................................................................................................ 12, 15

N.C. Gen. Stat. Ann. § 75D-4 ......................................................................................... 12

**Rules**

Fed. R. Civ. P. 10(b) ....................................................................................................... 15

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 3

Fed. R. Civ. P. 12(b)(7)...................................................................................................... 6

Fed. R. Civ. P. 19(a)(1)...................................................................................................... 6

Fed. R. Civ. P. 19(a)(1)(B)(ii)....................................................................................... 6, 7

Fed. R. Civ. P. 44.1........................................................................................................... 8

28169845v2 92132.127.09

Fed. R. Civ. P. 8(a) ...................................................................................................... 1, 13, 14, 15

Fed. R. Civ. P. 9(b) ...................................................................................................... passim

28169845v2 92132.127.09

Pursuant to Rules 8(a), 9(b), 12(b)(6), 12(b)(7), 19, and 44.1 of the Federal Rules of Civil Procedure, made applicable by Federal Rules of Bankruptcy Procedure 7002, 7008, 7009, 7012, and 9017, the 763 Defendants identified on Exhibit A to ECF 151 (collectively, "Moving Defendants"), file this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint filed on September 27, 2023 (ECF 129) by Plaintiffs, John Johnston, as joint provisional liquidator on behalf of PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd., and PB Life and Annuity Co., Ltd., and PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia, Ltd., and PB Investment Holdings, Ltd. (collectively, "JPLs"), requesting that the Court dismiss the Amended Complaint, or alternatively, stay the action.

## **INTRODUCTION**

For over three years, the JPLs have spent more than "57,000 person-hours" reviewing "more than three million pages" of documents. [ECF 129, ¶¶ 63-64]. The fruit of their labor is an amended complaint against 957 defendants riddled with a host of pleading deficiencies. It does not satisfy any applicable pleading standard and should be dismissed.

The Court should dismiss the amended complaint for any number of reasons. Of the 763 Moving Defendants, the amended complaint makes no specific mention of 646 of them, outside of identifying them as parties. Instead, the JPLs lump them all together as "Lindberg Affiliates," failing to plead any particular allegations against those defendants individually. This type of group-pleading is impermissible and does not satisfy Rule 8(a), let alone Rule 9(b)'s heightened pleading standard.

Moreover, despite hundreds of defendants, there are several glaring absentees. The amended complaint identifies Bankers Life Insurance Company, Colorado Bankers Life

1

Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation (collectively, "NC Insurance Companies") each as a "necessary party." [ECF 129, ¶¶ 88-91]. But the action against the NC Insurance Companies is stayed pending appeal, and this Court held the JPLs in contempt for violating that stay. [ECF 142, 164-1].[1] In any event, these "necessary part[ies]" are not currently joined to the lawsuit. The amended complaint should be dismissed for that reason alone, or alternatively, the case should be stayed until the NC Insurance Companies are joined.

Even if the Court does not dismiss the case entirely, it should eliminate almost all parties and claims based on pleading deficiencies. Specifically, sixteen (16) of the JPLs' forty-eight (48) Counts arise under Bermuda law. But American law requires the JPLs to plead specifically which Bermuda laws are at issue so that the Court may apply those laws. The amended complaint does not do that for almost any of the "Bermuda law" claims. Those should be dismissed.

The other Counts simply fail to meet the pleading standards in a variety of ways. Rule 9(b)'s heightened pleading requirements apply to seventeen (17) of the Counts. The amended complaint not only lacks the particulars that Rule requires, but is fraught with inconsistent and contradictory assertions that undermine the JPLs' own allegations. Regardless, under any standard, a complaint must be plausible on its face to survive dismissal. But somewhere between pages 1 and 500 of the amended complaint, any vapor of plausibility fades into oblivion.

---

[1] The Court's order finding contempt and awarding sanctions against the JPLs' counsel has not been entered. Attached, however, as Exhibit 1 is a copy of the hearing transcript that includes the Court's ruling.

28169845v2 92132.127.09

## **ARGUMENT**

**(a)**      **All Counts against 646 of the 763 Moving Defendants should be dismissed because there are no allegations against them.**

A complaint should be dismissed under Rule 12(b)(6) when it fails to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). A court accepts only the complaint's factual allegations and reasonable inferences that can be drawn therefrom, as true. *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Stated another way, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The law requires "at minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *SCE Group, Inc. v. City of N.Y.*, No. 18 Civ. 8909, 2020 WL 1033592 at *3 (S.D.N.Y. March 3, 2020) (citing *Atuahene v. City of Hartford*, 10 Fed. App'x. 33, 34 (2d Cir. 2001)). "Pleadings fail to meet that minimum requirement where allegations lump all the defendants together in each claim and provide no factual basis to distinguish their conduct." *SCE Group, Inc.*, 2020 WL 1033592 at *3 (internal quotes omitted).

That is exactly what the JPLs' amended complaint does. Aside from the case style and "Parties" section, the amended complaint contains no specific mention of 646[2] of the 763 Moving Defendants. And yet, the JPLs lump those Moving Defendants into Counts I, II, IV, V, VI, X, XI, XII, XIII, XIV, XVI, XVII, XVIII, XIX, XX, XXI, XXIV, XXV, XXXIII, XXXIV, XXXV, XXVI, XXXVII, XLII, XLIII, XLIV, XLV, XLVI, XLVII, XLVIII under the broad

---

[2] Those 646 Moving Defendants are set forth in <u>Exhibit 2</u> to this motion.

3

definition of "Lindberg Affiliates" or "Debtor Investment Counterparties" or "RICO Defendants." That is not sufficient to state a claim against those Moving Defendants. *See SCE Group, Inc.* 2020 WL 1033592 at *3; *Medina v. Bauer*, No. 02 CIV. 8837(DC), 2004 WL 136636 at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong").

The JPLs' two Counts for veil piercing do not absolve their impermissible group pleading either. Pleading an alter ego or veil piercing claim under North Carolina law requires factually supported allegations of one's "complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked." *Nicks v. Nicks*, 241 N.C. App. 487, 497 (2015). On this point, the JPLs' allegations are both conclusory and inconsistent.

For instance, the only allegation against most defendants individually is that "Upon information and belief, Defendant [so-and-so] is a necessary party and a company owned or controlled directly or indirectly by Greg Evan Lindberg . . . ." [ECF 129, ¶ 92, et. seq]. That does not come close to pleading an alter ego or veil piercing claim. *See Nicks*, 241 N.C. App. 497.

Moreover, on the one hand, the amended complaint asserts that "Lindberg exercised complete domination over the Debtors so that none of the Debtors had a separate existence from any of Global Growth, the Debtor Investment Counterparties, and the Lindberg Affiliates." [ECF 129, ¶ 2059]. Yet, the JPLs concede that Debtor PBLA had its own President, Chief Financial Officer, ten (10) different Directors, Chief Operations Officer, Secretary, Chief Legal Officer and Assistant Secretary, and an outside company – Aon Insurance Managers (Bermuda) Ltd. – serving as its Principal Representative and Insurance Manager. *Id.* at ¶ 74. Similarly, the JPLs

28169845v2 92132.127.09

identify not Lindberg, but Scott Boug, as Debtor Northstar's "Principal Representative and President . . . Director . . . and Chief Executive Officer." *Id.* at ¶ 76. And, like PBLA, the JPLs concede Northstar had numerous officers, directors, a secretary, a "Money Laundering Reporting Officer," and a "Deputy Anti-Money Laundering Officer." *Id.* In fact, according to the JPLs, Lindberg served on Northstar's board for only one month in 2018. *Id.* And, he never served in any director or officer role at Debtors Omnia or PBIHL. *Id.* at ¶¶ 78, 80. Contrary to Lindberg's complete domination over the Debtors, the JPLs admit there were numerous "others involved or connected with the business of the Debtors such as regulators, auditors and accountants, and lawyers." *Id.* at 1158. The allegation that "Lindberg exercised complete domination over the Debtors" is not only unsupported, but contradicted by the JPLs' own allegations.

The same is true with respect to the JPL's conclusory assertion that Lindberg completely dominated non-Debtor Moving Defendants. According to the JPLs, "the operating companies did the accounting themselves," and virtually every transaction alleged in the amended complaint includes someone other than Lindberg exercising discretion. *See e.g.*, *Id.* at ¶¶ 1097, 1621, 1646-1652. Indeed, the JPLs neatly identify almost fifty (50) different people – from CEOs and CFOs to lawyers, tax professionals, bookkeepers, and accountants – who the JPLs allege "facilitated, assisted, and furthered the fraudulent scheme" alleged in the amended complaint. *Id.* at ¶ 1609. The JPLs' threadbare recitals to support their veil-piercing counts cannot stand on their own, much less in the face of the JPLs' own, contradicting allegations. Those counts should be dismissed along with the 646 Moving Defendants who never make a material appearance in the JPLs' amended complaint.

28169845v2 92132.127.09

**(b)      The entire amended complaint should be dismissed under Rule 12(b)(7), or alternatively, stayed until the NC Insurance Companies are joined.**

Rule 12(b)(7) allows for dismissal where a plaintiff fails to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). "Joinder of a party under Rule 19 entails a two-step analysis, pursuant to which the Court considers (1) whether the absent party belongs in the suit, i.e., qualifies as a 'necessary' party under Rule 19(a), and (2) whether joinder of the absent party is feasible and will not deprive the Court of subject matter jurisdiction." *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 424 (S.D.N.Y. 2022), modified sub nom. *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-CV-2753 (MKV), 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023).

Under the first step, Rule 19(a) requires a person to be joined if the court cannot accord complete relief in that person's absence, or "that person claims an interest related to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Here, there is no doubt the NC Insurance Companies are necessary parties who are required to be joined. The JPLs concede as much, defining each of the NC Insurance Companies as "a necessary party." [ECF 129, ¶¶ 88-91]. Even so, they are not necessary parties in name only, but are inextricably intertwined in the alleged transactions such that there is no way to adjudicate this case without the substantial risk of imposing inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

For example, the JPLs allege that without the relief they seek in this case, the NC Insurance Companies will "control over 500 entities affecting at least seventy (70) Debtor

6

28169845v2 92132.127.09

Investments." [ECF 129, ¶ 1749]. Indeed, the JPLs allege that two of the NC Insurance Companies are agents on twenty-nine (29) of the Debtors' loans to affiliates. *Id.* at ¶ 1735. They also allege that the NC Insurance Companies' special deputy rehabilitator "knowingly sacrificed the Debtors' continued viability . . . for the benefit of the [NC Insurance Companies]" and that the NC Insurance Companies and their leadership "pursued the interests of [NC Insurance Companies'] policyholders . . . with conscious and reckless disregard . . . of the Debtors' assets maintained for the benefit of the Debtors' policyholders." *Id.* at ¶¶ 1678, 1698. Moreover, the JPLs admit their allegations mirror the NC Insurance Companies' RICO allegations in a separate, pending lawsuit, wherein the NC Insurance Companies "alleged a host of racketeering violations involving many of the same facts and defendants alleged in this Amended Complaint." *Id.* at ¶ 1589.

In fact, speaking of the JPLs and the NC Insurance Companies at a recent hearing in this case, JPLs' counsel said:

> So the parties are inextricably intertwined whether we like it or not. We continue to be co-investors in maybe hundreds of companies either directly or indirectly, and we're going to need to sort that out someday one way or the other. That's not an issue for today, but it goes to how inextricably intertwined the North Carolina insurance companies are with the Bermuda insurance companies.

*See* Ex. 1 at 35:13-20. There is no way to untangle the alleged interests of the JPLs and NC Insurance Companies without imposing inconsistent obligations on the parties. The NC Insurance Companies are consequently necessary parties. Fed. R. Civ. P. 19(a)(1)(B)(ii).

And while the amended complaint identifies the NC Insurance Companies as defendants, they are not joined to this lawsuit for purposes of Rule 19. *See Landress v. Tier One Solar, LLC*, 243 F. Supp. 3d 633, 644 (M.D.N.C. 2017) (finding necessary person's joinder was "infeasible or, at best, questionable" where he filed bankruptcy, staying judicial proceedings against him).

7

Accordingly, the amended complaint should be dismissed, or alternatively stayed, until the NC

Insurance Companies can be joined. *See id.* at 639 ("'The inquiry contemplated by Rule 19 is a

practical one' which is left 'to the sound discretion of the trial court.'")(quoting *Coastal Modular*

*Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980)).

> (c)    **Counts XII, XV, XVI, XVII, XXXIII, XXXIV, XXXV, XXXVII, XXXIX, XL, XLI, and XLII should be dismissed under Rule 44.1 for failing to identify foreign law.**

To satisfy Rule 8's pleading standard with respect to a claim asserted under foreign law, a

plaintiff must give notice required by Rule 44.1. That rule says, "A party who intends to raise an

issue about a foreign country's law must give notice by pleading or other writing." Fed. R. Civ.

P. 44.1. The purpose of the rule is two-fold: to avoid unfair surprise and to enable the court to

apply the foreign law. *See Id.* at Advisory Committee Note 1; *In re Fairfield Sentry Ltd.*, 627

B.R. 546, 556 (Bankr. S.D.N.Y. 2021). Thus, a plaintiff asserting that a foreign law applies

carries "the burden of proving foreign law to enable . . . the court to apply it in a particular case."

*In re Fairfield Sentry Ltd.*, 627 B.R. at 556; *see also Prol v. Holland-Am. Line*, 234 F. Supp. 530,

536 (S.D.N.Y. 1964) ("It is well established that foreign law is a matter of fact which must be

pleaded and proved with definiteness.").

The JPLs have not met that burden here. They assert sixteen (16) claims under "Bermuda

law" against one or more of the Moving Defendants. [ECF 129, at Counts I, X, XI, XII, XV,

XVI, XVII, XXXIII, XXXIV, XXXV, XXXVII, XXXVIII, XXXIX, XL, XLI, and XLII].

Twelve (12) of those lack any reference to any Bermuda rule, statute, or legal authority that

would allow the Moving Defendants or the Court to apply the foreign law to this case. [ECF 129,

at Counts XII, XV, XVI, XVII, XXXIII, XXXIV, XXXV, XXXVII, XXXIX, XL, XLI, and

XLII].  Accordingly, those claims should be dismissed. *See Prol*, 234 F. Supp. at 536 ("As to

28169845v2 92132.127.09

that allegation, Judge Croake held that Dutch substantive law governed the cause of action and

that libelant had failed to plead that law with specificity. He accordingly granted the motion to

dismiss with leave to amend.").

> **(d)     Counts I-VI, X-XI, XVI-XIX, and XLIV-XLVIII should be dismissed under Rule 9(b) for the JPLs' failure to plead those Counts with particularity.**

In alleging fraud, a plaintiff "must state with particularity the circumstances constituting

fraud." Fed. R. Civ. P. 9(b). That means a complaint must: "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*,

355 F.3d 164, 170 (2d Cir. 2004).

This heightened pleading standard applies to Counts I-VI, X-XI, XVI-XIX, and XLIV-

XLVIII asserted against any one or more of the Moving Defendants. *See Gold v. Morrison-

Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995) (acknowledging Second Circuit's application of

Rule 9(b) to RICO claims where the predicate acts are based on fraud); *In re Dreier LLP*, 452

B.R. 391, 423 (Bankr. S.D.N.Y. 2011) (applying Rule 9(b) to claims of actual fraudulent

transfer); *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008)

(holding Rule 9(b) applies "to any claim that 'sounds in fraud,' regardless of whether fraud is an

element of the claim")[3]; *Rahl v. Bande*, 328 B.R. 387, 413 (S.D.N.Y. 2005) (analyzing certain

Bermuda law claims under Rule 9(b)); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228

F.R.D. 508, 512 (S.D.N.Y. 2005) ("[W]here a veil-piercing claim is based on allegations of

---

[3] But note there is conflicting authority as to the application of Rule 9(b) to constructive fraud claims. *Marketxt Holdings Corp. v. Engel & Reiman*, P.C., 693 F. Supp. 2d 387, 397 n.75 (S.D.N.Y. 2010) ("There is some disagreement among courts in the Second Circuit as to whether Rule 9(b) governs constructive fraud claims. . . The Court notes that this disagreement largely may be attributed to problems of language and that constructive fraud of the type at issue here appears properly subject to Rule 9(b)'s requirements.").

28169845v2 92132.127.09

fraud, 'the heightened pleading standard of Rule 9(b) is the lens through which those allegations must be examined'").

In other words, each one of those Counts requires the JPL's to plead the who, what, where, when and why as to each allegedly fraudulent statement. *See e.g. In Re Ford Fusion and C-Max Fuel Economy Litigation*, No. 13-MD-2450 (KMK), 2015 WL 7018369 at *12 (S.D.N.Y. Nov. 12, 2015) ("Rule 9(b) generally requires that a plaintiff specify the who, what, where, when, and why of the alleged fraud; specifying which statements were fraudulent and why, who made the statements to whom, and when and where the statements were made. These details principally serve to provide a defendant with fair notice of a plaintiff's claim.").

JPLs do not satisfy the standard as to any of those Counts. Instead of particularized allegations against anyone, the JPLs lodge their accusations against groups of defendants, clumping hundreds of them together without distinction. *See e.g.*, [ECF 129, ¶ 6 n.4] (defining "Lindberg Affiliates" as all approximately 978 defendants except nine (9) of them).

Despite two years of pre-suit discovery, "57,000 person-hours," and "more than three-million pages of documents," the amended complaint identifies remarkably few statements by speaker, time, and place that the JPLs contend were fraudulent. [ECF 129, ¶¶ 63-64]. In fact, the first such statement does not appear until paragraph 1,351 on the 310th page of the amended complaint, and even then, it is an allegedly false statement made by . . . *a non-party to this case*. *Id.* at ¶¶ 1351-1352. The next alleged false statement, in paragraph 1,420, fails to identify even the speaker. *Id.* at ¶ 1420 ("Lindberg authorized others to tell the NCDOI . . . .").

Likewise, the amended complaint couches virtually every allegation of "sham investments" in the passive voice without identifying any particular speaker or substance of the communications. In fact, the JPLs repeatedly admit the Debtors received either a loan position or

equity interests in exchange for their investments. *See e.g.*, *id.* at ¶ 1188 (showing Northstar received preferred equity in Triton for its $5.728 million investment); ¶ 1197 (showing Northstar purchased preferred equity in UKAT for $18.5 million); ¶ 1224 (showing Northstar purchased preferred shares in ATL for $53 million); ¶ 1547 (showing Omnia purchased preferred equity in MWB Interco, LLC); ¶ 2085 ("The Debtors have valid loan agreements with the Debtor Investment Counterparties."); ¶ 2093 ("The Debtors have valid preferred equity agreements with the Debtor Investment Counterparties."). While the JPLs describe these investments ambiguously as "sham," there are notably few allegations that any were worthless. Instead, JPLs complain the investments were "risky or otherwise non-conforming." *Id.* at ¶ 1104. Even accepting those allegations as true for the purposes of this motion, they do not meet Rule 9(b)'s particularized demand to plead fraud.

That is especially true where the JPLs' allegations are not only conclusory, but inconsistent. On one hand, the JPLs complain of "sham transactions" with affiliates, but they likewise acknowledge there are "511 Lindberg Affiliates, the book value of which is believed to exceed $2 billion, including companies in which the Debtors invested over $500 million." *Id.* at ¶ 56. Or, take the alleged "sham transaction" of Daisy Seven, for example. [ECF 129, ¶¶ 1362-1374]. According to the JPLs, PBLA loaned $15.7 million to Daisy Seven and purchased preferred units in Daisy Seven for another $1.75 million, which it assigned to the PBLA ULICO trust account. *Id.* at ¶¶ 1362-63. Then, a month later the trust sold the preferred units *for a higher amount*, and more than $35.7 million "was transferred *to* the [PBLA ULICO trust account]." *Id.* at ¶ 1372 n.148 (emphasis added). Similarly, according to the JPLs, Omnia liquidated less than half of its preferred interests in an affiliated entity for more than $2 million that "Omnia received

11

. . . into its Delaware Wilmington Trust Account." *Id.* at 1559 n.164. Two billion dollars in value and cash flowing *to* the Debtors hardly supports JPLs' "sham" allegations.

Across the board, the JPLs' descriptions of "fraudulent transactions" lack factual allegations to support their contention that the loan and equity interests Debtors received in exchange for their investments were "sham investments." Even though the JPLs describe how proceeds from the investments were allegedly used, what's consistently missing from the amended complaint is the identification of any statement, by speaker, time, place and purpose, that was allegedly fraudulent. Without such allegations, JPLs fail to adequately plead Counts Counts I-VI, X-XI, XVI-XIX, and XLIV-XLVIII.

### (e)    The JPLs' RICO claims – Counts XLIV-XLVIII – fail for their own unique reasons.

The JPLs' RICO claims are subject to Rule 9(b)'s standard and should be dismissed for the same reasons their other fraud-based claims should be dismissed. *See Lesavoy v. Gattullo-Wilson*, 170 Fed. Appx. 721, 723 (2d Cir. 2006) ("All allegations of fraudulent predicate acts under RICO are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"). But there are additional reasons to dismiss their RICO claims too.

The federal RICO statute and North Carolina's RICO statute each generally require a plaintiff to plead the conduct of an enterprise through a pattern of racketeering activity that causes injury to the plaintiff. *See* 18 U.S.C. § 1962 ; N.C. Gen. Stat. Ann. § 75D-4.

"Plaintiffs pleading a RICO claim have a high burden." *Gutterman v. Herzog*, No. 20-CV-1081, 2020 WL 6728787 at *5 (E.D.N.Y. Nov. 16, 2020) (mem. op.). And "if the plaintiff is suing more than one person for a substantive RICO violation, he must allege that each participant committed two or more predicate acts, and that the predicate acts are related, and either amount to or pose a threat of, continuing criminal activity." *Id*. That is partly because "plaintiffs have

28169845v2 92132.127.09

often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations." *Id.* at *3 (quoting *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010)).

"Moreover, RICO is a specialized statute requiring a particular configuration of elements." *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, No. 03 Civ. 10027, 2004 WL 1110423 at *10 (S.D.N.Y. May 19, 2004). "These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Id.* "Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate." *Id.*

That is exactly what the JPLs have done in their amended complaint. Each of the RICO Counts incorporates by reference, not hundreds, but more than a thousand previous paragraphs. [ECF 129, ¶¶ 2232, 2241, 2248, 2254, 2261]. Worse, those incorporated paragraphs themselves incorporate yet a host of other materials by reference, including indictments and judgments from other proceedings. *Id.* at ¶ 1611. That is not sufficient to plead a RICO case. In fact, the Eastern District of New York considered a plaintiff's attempt to plead RICO elements with incorporated materials and held:

> Putting aside the fact that the Amended Complaint does not explicitly incorporate any allegations from the prior pleadings attached as exhibits, the Government's proposed method of pleading necessary elements of its RICO claim by incorporating factual allegations contained in several prior lengthy criminal and civil RICO pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a "short and plain statement of the claim showing the pleader is entitled to relief."

*U.S. v. Int'l Longshoremen's Assoc.*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (quoting Fed. R. Civ. P. 8(a)).

13

So too is the JPLs' amended complaint. None of the JPLs' RICO allegations can be fairly described as "tightly particularized and connected." *G&R Moojestic Treats, Inc*, 2004 WL 1110423 at *10. Their chosen method of pleading their RICO claims is simply insufficient under either Rules 9(b) or 8(a).

Moreover, the JPLs fail to plead basic elements of any RICO action. Specifically, they lodge each of their RICO Counts against all "RICO Defendants," which is a term that is ill-defined in the first place, and then sub-defined, sub-sub-defined, and sub-sub-sub defined over the course of 14 pages. [ECF 129, ¶¶ 1583-1609; 2232-2275]. By lumping all "RICO Defendants" together, JPLs fail to plead an "enterprise" or a "pattern or racketeering activity." *See Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353-54 (8th Cir. 2011) (affirming dismissal of a RICO claim accusing 17 defendants of "fraudulently obtain[ing] funds from Plaintiffs" by "operating a sophisticated shell game, and using multiple individual companies as members of the RICO enterprise"); *Adolphe v. Option One Mortg. Corp.*, No. 3:11-cv-418-RJC, 2012 WL 5873308 at *5 (W.D.N.C. Nov. 20, 2012) ("Instead [of describing an enterprise], Plaintiff alleges each claim against nearly all of the twenty-four Defendants and proposed defendants, making it impossible to determine what claims are alleged against an individual Defendant, much less the alleged conduct underlying the claim."); *TM, LLC v. Anderson*, No. 2:11-CV-00071, 2012 WL 4483180 at *3 (E.D.N.C. Sept. 27, 2012) ("Absent some factual enhancement, allegations such as 'defendants agreed, cooperated, and conspired with one another to commit the fraudulent transfers," or that [the moving defendants and others] 'joined in a scheme such that they also acquired and maintained an interest in the enterprise through a patter of racketeering activity, are insufficient to satisfy *Twombly*, not to mention Rule 9(b)'s particularity requirement."); *Barmapov v. Amuial*, No. 9:18-CV-80390, 2018 WL 11267365 at *5 (S.D. Fla. Dec. 12, 2018)

14

("Plaintiff impermissibly lumps Defendants together throughout the Amended Complaint in an improper shotgun format rendering it unclear and confusing as to which Defendant is being charged with which conduct in violation of Fed. R. Civ. P. 8(a)2) and 10(b), as well as in violation of Rule 9(b) as to many of the asserted claims.").

Further, Count XLV – the JPLs' RICO claim under Section 1962(a) – fails for an additional reason. Under that provision, a plaintiff must also plead that a person has participated in the pattern of racketeering activity "as a principal within the meaning of section 2, Title 18, United States Code." 18 U.S.C. § 1962(a). That allegation does not appear in the amended complaint. Thus, Count XLV should be dismissed on that basis as well.

Overzealous RICO claims should be "flush[ed] out" at "an early stage of the litigation" because plaintiffs bringing civil RICO claims "almost always miss the mark." *Gutterman*, 2020 WL 6728787 at *5. The JPLs are no different and their RICO Counts should be dismissed.

## CONCLUSION

The JPLs did not have to bring all their claims against 950+ defendants in one lawsuit. But since the JPLs chose to do so, the law requires them to plead factual allegations that support their claims against each one of those defendants. The amended complaint does not come close.

For all the reasons above, Moving Defendants respectfully request that the Court dismiss the JPLs' amended complaint, or alternatively, stay this case. Moving Defendants further request all other relief to which they are entitled.

15

**CONDON TOBIN SLADEK**
**THORNTON NERENBERG PLLC**

*/s/ Jared. T.S. Pace*
Aaron Z. Tobin (*pro hac vice*)
atobin@condontobin.com
Jared T.S. Pace (*pro hac vice*)
jpace@condontobin.com
Gage Taylor (*pro hac vice*)
gtaylor@condontobin.com
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: 214-265-3800
Facsimile: 214-691-6311

*Attorneys for Moving Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on December 15, 2023, the foregoing document was electronically filed with the Clerk of Court and served on all counsel of record using the Court's CM/ECF system.

*/s/ Jared T.S. Pace*
Jared T.S. Pace

16